**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


LEROY MCKNIGHT, *ET AL.*,

                Plaintiffs,

                                     CIVIL ACTION  NO. 05-70666

v.

                                     HONORABLE ARTHUR J. TARNOW

GENERAL MOTORS CORP.,           UNITED STATES DISTRICT JUDGE

                Defendant.

—————————————————————————/

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT [D/E # 21]**


      For the reasons that follow, this Court GRANTS Defendant's Motion for Summary

Judgment.  Plaintiffs lack standing under the Americans with Disabilities Act ("ADA") to

challenge the applicable pension integration provisions based on the plain language of the statute

and case law.  Even if standing were to exist, Plaintiffs' ADA claims would still be dismissed

because Plaintiffs had equal access to General Motors' pension plans.  Plaintiffs'  Employee

Retirement Income Security Act ("ERISA") claim is dismissed because ERISA authorizes the

integration of Social Security Disability Insurance Benefits ("SSDIB") with pension benefits.

Finally, this court declines to exercise supplemental jurisdiction over Plaintiffs' state law claim.

As a result, the case is DISMISSED WITHOUT PREJUDICE as to the state law claim.

**INTRODUCTION**

      From March 17, 1969, until February 1, 2000, Leroy McKnight was an hourly employee

of General Motors Corporation ("GM").  On February 1, 2000, he opted for an early retirement

package pursuant to a September 28, 1999, Supplemental Agreement Covering Pension Plan

("the Pension Plan") that was entered into by GM and the United Auto Workers.  As a result,

McKnight began receiving $501.89 in monthly pension benefits and $2,228.11 in monthly

supplemental pension payments.  In November 2000, he began receiving Social Security

Disability Insurance Benefits ("SSDIB") in the amount of $1,592.20 a month on account of a

back injury.  Pursuant to the Pension Plan, GM reduced his supplemental pension payments by

$1,165.50.

McKnight filed a charge with the Equal Employment Opportunity Commission

("EEOC").  After an investigation, the EEOC issued a right to sue letter on November 15, 2004,

explaining that it was unable to conclude that GM had violated any statute.

McKnight then filed suit in district court asserting that the Pension Plan does not

authorize GM to reduce pension benefits of disabled retirees who become entitled to SSDIB

because it violates the ADA, the Michigan Persons With Disabilities Civil Rights Act

("PWDCRA"), and the ERISA.  Plaintiff argues that he meets the terms of the Pension Plan by

having over thirty (30) years of service, retiring early, and being able to perform the essential

functions of his former job at GM with reasonable accommodations at the time of his retirement.

On October 17, 2005, the complaint was amended to include three additional Plaintiffs

who were treated similarly.  These Plaintiffs claim that the provisions of the Pension Plan and

the GM Retirement Program for Salaried Employees ("the Retirement Program"), which require

a portion of one's early retirement supplement become unavailable at the time a retiree becomes

or could have become eligible for a SSDIB, violate the ADA, the PWDCRA and the ERISA.

**APPLICABLE PLAN PROVISIONS**

The Pension Plan provides retirement benefits to eligible participants based on

completion of years of credited service.  Employees who retire after completing more than 30

years of credited service are eligible to receive an early retirement supplement until the retiree

becomes eligible for Social Security benefits.  Appendix A, Article II, § 6.

> (a) An employee who retires under Section 2 (other than an employee referred to
> in Section 4(d) of this Article II, unless the Corporation or Impartial Umpire
> under an applicable collective bargaining agreement determines the discharge
> should not result in the employee being ineligible for benefits under this Section
> 6, or Section 3 of this Article II, and who retires within five years of the last day
> worked for the Corporation will receive, in addition to the pension, certain
> supplements as set forth below:

(1) If the employee retires under Section 2 or Section 3 of this Article II with 30
or more years of credited service at the date of retirement, such employee shall be
entitled to a monthly early retirement supplement until age 62 and one month in an amount
which when added to the monthly pension under this Plan will equal the amount of total monthly
benefit provided in the table set forth below, subject provision of this Section 6.

Ex. A, p. 15.

The Pension Plan provides that a portion of the early retirement supplement, in an

amount equal to the temporary benefit, is not payable once an retired employee becomes or

could have become eligible for SSDIB either through disability or because they reach the age

one becomes eligible for Social Security benefits (62 years and 1 month).  Article II, § 6(b)

provides:

> (b) The early retirement supplement under provision (a)(1) of this Section 6 for an
> employee who retires at the employee's option shall be calculated assuming that
> the basic pension commences immediately after retirement, and such early
> retirement supplement and the interim supplement under provisions of (a)(2) of
> this Section 6 shall be reduced for any month prior to age 62 and one month, for
> which the employee becomes or could have become eligible for a Federal Social
> Security benefit, by an amount equal to the amount of the temporary benefit to
> which the employee would have been entitled if retired under Section 2(b) of this
> Article II.

Ex. A., p. 17.

Plaintiffs challenge this provision that requires a reduction of the early retirement

supplement once one becomes eligible for SSDIB.

Two Plaintiffs retired under the Retirement Program.  Exhibit B.  Their entitlement to the

temporary benefits is described in Part A, Article 1, § 4(a)(ii):

> (ii) A temporary benefit for each year of credited service, up to 30...
> The monthly temporary benefit shall be payable until the earlier of (1) age 62 and
> one month, or (2) the age at which the employee becomes, or could have become,
> eligible for a Federal Social Security benefit for disability or an unreduced
> Federal Social Security benefit for age.  At such age the temporary benefit shall
> cease to be payable.

Ex. B.  Entitlement to an early retirement supplement is described at Part A, Article I, § 7.

> (a) An employee who retires with benefits payable under Section 2 of this Article...or who retires with benefits payable under Section 4 of this Article, and who retires within five years of the last day worked for the Corporation will receive, in addition to retirement benefits, certain supplements as set forth below:

>> (1) If the employee retires under Section 2 or 4 of this Article with 30 or more years of credited service at the date of retirement and such employee's date of hire was prior to January 1, 1998, such employee shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to the monthly retirement benefit under this Part A and any supplementary benefits under Part B, prior to reduction for survivor coverage, will equal the amount of total monthly benefit provided set for below...

> (b) The early retirement supplement under subsection (a)(1) of this Section 7 for an employee who retires voluntarily shall be calculated assuming that the basic benefit commences immediately after retirement, and such early retirement supplement under subsection (a)(2) of this Section 7 shall be reduced for any month prior to age 62 and one month for which the employee becomes or could have become eligible for a Federal Social Security benefit, by an amount equal to the amount of the temporary benefit to which the employee would have been entitled if retired under Section 4 of this Article I.

Ex. B.

Under both the Pension Plan and the Retirement Program, the early retirement benefits are designed to decrease by the amount received from the government either at the time when either: a) they reach the age to receive Social Security Benefits; or b) they become eligible for SSDIBs  prior to age 62 and one month.  Both the Pension Plan and the Retirement Program were designed to achieve what is referred to as "benefit integration" with Social Security benefits.  Benefit integration permits a higher level of income to all retired/disabled employees by allowing benefits under such plans to take credit for other income streams that a participant may be entitled to receive.

## THE EMPLOYEES' CIRCUMSTANCES

After commencing early retirement, each Plaintiff became disabled prior to the age 62 plus one month.  Additionally, each Plaintiff applied for and was later awarded SSDIB because

they met the definition of disabled established by the Social Security Administration ("SSA").

After 30 years of credited service, McKnight retired under the Pension Plan on Feb 1, 2000.  McKnight later applied for and was awarded SSDIB effective December 2000.  GM now claims that it overpaid him $10,489.50.

Nicholas Klayo retired January 1, 1999 under the Retirement Program after 30 years of credited service.  After filing for SSDIB in December 2002, Klayo was retroactively awarded SSDIB effective from December 2001.  Due to the retroactive award, GM argues that he was overpaid $35,166.96 as a result.

Robert Griffin completed 26 years of credited service under the GM Retirement Program, then transferred to American Axle.  In total he completed 30 or more years and retired December 1, 1998.  Griffin receives retirement benefits from the Retirement Program for his 26 years as well as retirement benefits from American Axle.  Griffin filed his application for SSDIB on March 22, 1999 and was awarded SSDIB on April 1, 1999 for benefits retroactive from October 12, 1998.  As a result, GM believes it overpaid him $30,446.40.

Carol Dudek,worked for GM for 24 years and then transferred to American Axle.  On January 1, 1999, assets held in the GM Retirement Program for employees who still worked for GM component facilities were transferred to the retirement plan established by Delphi.  As a result, she receives her retirement benefits from Delphi for 24 years and American Axle for 6 years.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Lack of Standing Under the ADA**

The ADA prohibits discrimination against a qualified individual with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions and privileges of employment."  42 U.S.C. 12112(a).  A qualified individual is defined as someone who has a disability "who with or without reasonable accommodation, can perform the essential functions of the employment

position that such individual holds or desires."  42 U.S.C. 12111(8).

> The regulations governing the ADA specifically provide that it is unlawful for an employer to discriminate on the basis of disability against a qualified individual with a disability in regard to 'fringe benefits available by virtue of employment...'. 29 C.F.R. § 1630.4(f)(1996).

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (*en banc*).

Plaintiffs were awarded SSDIB after being found to be disabled as defined by the SSA, *i.e.*, an "inability to do any substantial gainful activity because of any medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. §§ 404.1505(a), 416.905(a). By qualifying for SSDIB and receiving benefits, none of the Plaintiffs can be considered a "qualified individual with a disability."

In *Parker v Metro Life Ins. Co.* ("*Parker I*"), a three judge panel of the Sixth Circuit addressed the applicability of the ADA to a corporate disability plan's 24-month limitation of benefits to those affected by mental or nervous disorders.  99 F.3d 181(6th Cir. 1996), *aff'd*, 121 F.3d 1006 (6th Cir. 1997)(*en banc*), *cert. denied*, 522 U.S. 1084 (1998).  The panel upheld the district court's ruling that the former employee/plaintiff lacked standing to raise a Title I ADA claim because she could not perform the essential functions of her job and therefore was not a "qualified individual with a disability" as required by the ADA.  *Id*. at 185.  The plaintiff in *Parker I* argued that she was invoking the statute in an effort to retain the "employment position" of a "benefit recipient."  *Id*. at 186.  The panel responded by stating:

> Plaintiff's proposed construction of the statute is not persuasive.  The concept of "benefits recipient" as an "employment position" relies on a convoluted construction of the statutory language, which conflicts with the plain meaning of the words.  Perhaps the drafters of the statute intended that Ms. Parker's situation to bring her within the coverage of the Disabilities Act.  If that is the case, they failed to provide definitions that lend themselves to doing so.  Unfortunately, Congress may not have taken this situation into account.  Such an oversight, however, is for Congress to remedy.  We should not try to rewrite the statute in a way that conflicts with what appears to be fairly clear language.

*Id*. at 187.

In an opinion that did not specifically address the issue of standing,[1] an *en banc* panel of

the Sixth Circuit determined that even though the ADA prohibited discrimination between

disabled and non-disabled, the plan's provisions did  not violate the ADA because the employees

received the "same access" to benefit plans.

> The disparity in benefits provided in the policy at issue is also not prohibited by
> the ADA because the ADA does not mandate equality between individuals with
> different disabilities.  Rather, the ADA prohibits discrimination between the
> disabled and the nondisabled; specifically, the ADA mandates that the owners,
> lessors, and operators of public accommodations provide equal access to the
> disabled and non-disabled.  Because all employees at Schering-Plough, whether
> disabled or not, received the same access to the long-term disability plan, neither
> the defendants nor the plan discriminated between the disabled and the able
> bodied.

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1015-16 (6th Cir. 1997)(*en banc*) ("*Parker II*").

Applying the rationale of *Parker I*, Plaintiffs lack standing to raise an ADA claim

because they are not qualified individuals, *i.e.,* they cannot perform the essential functions of

their employment positions with or without reasonable accommodations at the time of the

alleged discrimination.

Plaintiffs argue that the *Parker I* decision is not binding precedent since the opinion was

vacated and the case was decided on separate grounds by the *en banc* panel.  Plaintiffs contend

that a former employee's standing to sue for benefits discrimination under Title I should be

measured at the time of retirement when a plaintiff was "otherwise able to perform the essential

functions of their former jobs with Defendant, with reasonable accommodation,"  not at the time

---

[1] The case was reviewed *en banc* but only with respect to the district court's decision
concerning Plaintiff's separate Title III argument.  The standing issue was not addressed because
"Although Parker discusses her Title I claim in her briefing to the en banc court, Parker did not
seek rehearing on the disposition of the Title I claim."  *Id* at 1008 fn.2.  The *en banc* decision
recounted that the district court dismissed plaintiff's Title I claim due to lack of standing.
"Because Parker was not a qualified individual under Title I, a suit against her employer could
not be maintained under the ADA."  121 F.3d at 1008.

of suit as the *Parker I* court determined.  This measure was adopted by the Second Circuit Court

of Appeals' opinion *Castellano v. City of New York*, where the court ruled that disabled plaintiff-

retirees had standing under the ADA to file suit if they were able to perform the essential

functions of their jobs with or without accommodation up to the time they became eligible for

the benefits in question.  142 F.3d 58, 69 (2nd Cir. 1998).  In arriving at this conclusion, the court

determined that the legislative history of the phrase "qualified individual with a disability" was

not conclusive in defining the time of an employment action.  *Id*. at 67.  To determine the correct

measure, the court then looked to the essential function of the ADA, to stop disability

discrimination whenever it happens.  *Id*. at 67-68.  Since this broad interpretation was proper, the

court found that a retiree who works long enough to establish entitlement to an employer-related

fringe benefit is a "qualified individual with a disability" within Title I of the ADA.  *Id*.

Despite Plaintiffs' argument to the contrary, *Parker II* did not disturb the original panel's

disposition of the Title I issues in *Parker I*.  According to a footnote in the *en banc* opinion,

*Parker I*'s Title I standing ruling was not raised as an issue when Plaintiff sought rehearing.  121

F.3d at 1009, fn 2.  Thus, the *en banc* court neither adopted nor rejected *Parker I*'s rationale on

this issue.  Although the *Parker I* opinion may have been technically vacated through an order to

hear the case *en banc*, the opinion is still cited and the reasoning is still relied upon by other

circuits.  *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000); *see

alsoEEOC v. CNA Ins. Cos.*, 96 F.3d 1039 (7th Cir. 1996); *Gonzales v. Garner Food Services,

Inc.*, 89 F.3d 1523 (11th Cir. 1996); *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768

(8th Cir. 1987); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999).   In terms of legal

landscape surrounding this issue, only the Second Circuit, Third Circuit and certain First Circuit

district courts follow this "at the time of retirement" rule announced in *Castallano*.  *See

Castallano*, 142 F.3d 58 (2nd Cir. 1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir.

1998); *see also Fletcher v. Tufts*, 367 F.Supp.2d 99 (D. Mass. 2005).

In a case with a similar factual scenario as this case, the Ninth Circuit joined the majority

of Circuit Courts by rejecting a similar claim by holding that Plaintiff was not a qualified individual and thus was not protected by the ADA. *Weyer v. 20ᵗʰ Century Fox Film Corp*, *supra*. In *Weyer*, the plaintiff, who was totally disabled and collecting SSDIB, sought to challenge discrimination in fringe benefits applicable to a period of time following termination of her employment. Following the rationale of *Parker I*, the Ninth Circuit held that the plaintiff lacked standing to pursue an action under the ADA.

> We join the five circuits that have held that only persons who can perform the essential functions of a job can sue under Title I, rather than the two circuits that have held to the contrary, for compelling reasons. First, the statute says so, quite plainly. Second, most circuits have said it says so. Third, there is a sensisble purpose Congress may well have had in saying so, which gives us confidence that we understand the words. Fourth, other legislative, such as ERISA, addresses fringe benefits for people unable to perform the functions of a job even with reasonable accommodations. Finally other sections of the Act suggest that this distinction is intentional. For example, Title III of the Act regarding public accommodations applies not to "qualified individuals," but simply to any individual.

> We agree with the Sixth, Seventh, Tenth and Eleventh Circuits that someone who is totally disabled cannot sue under Title I's unambiguous provisions. Weyer is not a "qualified individual" because she cannot now perform the essential functions of the employment position as a result of her total disability, and because she was not disabled at the time of the alleged discriminatory conduct. The term "qualified" limits the protection of Title I of the Act.

> Title I also unambiguously excludes former employees. A "qualified individual" is one who "can performs the essential functions of the employment position that such individual *holds or desires*." "Holds," in the present tense, refers to current employees. Likewise, "desires," in the present tense, refers to people who presently want jobs, as opposed to those who do not, protecting job applicants against discrimination. This is language well designed to help people get and keep jobs, not help those no longer able to work get disability pay, Congress has the authority to improve the circumstances of disabled people in some respects even if it does not improve them in all respects. A statute may provide a partial remedy for what Congress perceives as a social problem because the proponents are compelled to compromise with others who think a broader statute would be a worse social problem.

*Id*. at 1112.

Even if the ruling of *Parker I* is not controlling precedent, at the very least, the opinion is instructive as to how the Sixth Circuit would rule if again presented with this issue. Additionally, a majority of circuits and district courts have found that standing does not exist, including a colleague from this district court who similarly relied on the reasoning of *Parker I*. *Fobar v. City of Dearborn*, 994 F.Supp. 878, 882-884 (E.D. Mich. 1998) (J., Rosen).  The plain language requires that to have standing the person "can perform" the essential functions of the employment position that the individual "holds or desires."  The retirees cannot perform the essential functions of the jobs since they are disabled as defined by the SSA.  Additionally, the retirees neither hold nor desire their former positions since they elected to take early retirement. Based on the majority of case law, the Sixth Circuit's ruling on this issue in *Parker I*, and the plain language of the statute, this court finds that Plaintiffs lack standing to sue under the ADA because they do not fit within the Act's definition of a qualified individual with a disability.

**Equal Access**

Even if Plaintiffs had standing to sue under the ADA, this court finds there would be no ADA violation based on the reasoning of *Leheny v. City of Pittsburgh*, 183 F.3d 220 (3rd Cir. 1999).  In *Leheny*, disabled police officers brought an action against the City of Pittsburgh contending, in part, that the offset of their pension benefits by worker's compensation violated provisions of the ADA.  *Id*. at 224-25.  Under the collective bargaining agreement  as modified by an arbitration award which included a pension plan provision, officers who were at least 50 years old and had at least 25 years experience could receive an enhanced retirement benefit equal to 75% of their average monthly pay.  *Id*. at 223.  For disabled officers receiving worker's compensation, the award provided that the officer could receive up to 66 2/3% of their pay from worker's compensation and receive 50% of their average monthly pay.  *Id*.  The award further provided that if worker's compensation benefits were reduced or eliminated after retirement, the pension could be increased back to 75% of their average monthly pay.  *Id*. at 224.

The Third Circuit ruled that these provisions were not violative of the ADA because

every employee had access to the same benefit plan.  "Every police officer who has attained the age of 50 years of age and 25 years of service is permitted to receive a 75% pension upon retirement from the force; 'every employee is offered the same plan regardless of that employees contemporary or future disability status.'"  *Id*. at 230.

> The Retirees are not prevented from receiving a 75% pension if they so desire.
> The arbitration award clearly states that every police officer who has attained 50
> years of age and 25 years of service is entitled to receive a 75% pension upon
> retirement from the police officer.  Disabled officers are not required by the
> arbitration award to accept the 50% pension and 66 2/3 % worker's
> compensation.  There is nothing in the circumstances that prevents a retired police
> officer from rejecting worker's compensation payments and thereby receiving the
> 75% pension.

*Id*.

Similar to the *Leheny* case where the retirees sought benefits of over 100% of their former salary, Plaintiffs seek to combine full SSDIB on top of their full GM pension benefits. Plaintiffs not only receive an amount equal to what they would receive if they only were given GM's temporary retirement supplement, they receive more than if they had just retired. Plaintiffs voluntarily elected to retire under the GM plans after 30 years of service.  At the time, each had documentation that indicated how SSDIB award before the age of 62 plus one month would cause a cessation or reduction in benefits in the amount of the temporary benefit. Everyone, both the able, the disabled, and the future disabled had equal access to the benefits programs.  Plaintiffs chose to apply for and later received SSDIB, which resulted in a reduction of their temporary entitlements.  Thus, even if Plaintiffs had standing, there is no violation of the ADA.

**ERISA Claim**

In *Allessi v. Raybestos-Manhattan, Inc.*, the Supreme Court considered whether ERISA's non-forfeitability provisions would prohibit the integration of pension benefits with other income . 451 U.S. 504 (1981)  The Court explained that the establishment of pension plans and the level of benefits they provide are left to the discretion of the employer:

ERISA leaves this question largely to the private parties creating the plan. That the private parties, not the Government, control the level of benefits is clear from statutory language defining nonforfeitable rights as well as from other portions of ERISA.

*Id*. at 511. The term nonforfeitable was defined "a claim to the benefit and not the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" *Id*. at 512, quoting *Nachman v. Pension Benefit Guaranty Group*, 446 U.S. 359, 371 (1980).

The Court's attention then turned to the plan's integration of pension benefits with other income streams, in particular Social Security benefits. It was determined that this process leads to a higher level of benefits for all participants. *Id* at 515. In analyzing whether the practice was permitted, the Court looked to Congress and determined that they did not prohibit this type of integration and "expressly preserved the option of pension fund integration with benefits available under both the Social Security Act... and the Railroad Retirement Act." *Id* at 514-515.

The Court also discussed plan integration with workers compensation, a variant of what occurred in this case.

[R]etirees conclude that integration with pension funds with workers' compensation awards lacks the rationale behind integration with pension funds with Social Security and Railroad Retirement... [However] [b]oth the Social Security and Railroad Retirement Acts provide payments for disability as well as for wages lost due to retirement, and ERISA permits pension integration without distinguishing these different kinds of benefits.

*Id*. at 518-519.

The *Allessi* opinion demonstrates that the Supreme Court has long recognized the value of integrating pension benefits with other income, including SSDB since it specifically held that such integration is allowed under ERISA. Even though not addressed by the Supreme Court decision in *Allessi* since it was prior to the passage of the ADA, every court that has since considered the question of the lawfulness of whether pension integration under the ADA has found it to be lawful. *See Bonovich v. Knights of Columbus*, 146 F.3d 57, 60 (2nd Cir. 1998); *Huppeler v. Oscar Mayer Foods Corp.*, 32 F.3d 245 (7th Cir. 1994); *Hammond v. Xerox Corp.*

*Retirement Income Guarantee Plan*, 1999 WL 33915859 (C.D. Cal. 1999); *DiCioccio v. Duquesne Light Co.*, 911 F.Supp. 880 (W.D. Penn. 1995).

This court agrees that integration of social security benefits and pension benefits have long been recognized as a valid practice by the Internal Revenue Service, Congress and the courts.  Thus, Plaintiffs' claim that the pension integration provisions violate the ERISA is dismissed because it has no merit.

**Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed.  Because Plaintiffs' ADA and ERISA claims have been dismissed, Plaintiffs have no basis for federal jurisdiction.  Therefore, the court lacks subject matter jurisdiction, and will decline to exercise its supplemental jurisdiction over Plaintiffs' state law claims.

**CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and as a result the case is **DISMISSED WITHOUT PREJUDICE** to the state law claims.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge


Dated:  March 20, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 20, 2007, by electronic and/or ordinary mail.

s/Theresa E. Taylor
Case Manager